UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KEISHA Y. HARRIS,

        Plaintiff,

-vs-                                    **Case No. 6:08-cv-886-Orl-GJK**

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

## MEMORANDUM OF DECISION

Plaintiff Keisha Y. Harris (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits. *See* Doc. No. 1. For the reasons set forth below, it is ordered that the Commissioner's decision is **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g)**.

## I.    BACKGROUND

Claimant was born on February 9, 1978, and she attended high school until the eleventh grade. R. 49, 251.[1] Claimant's past employment experience includes working at a fast food restaurant, housekeeping, and working as a dietary aide. R. 68-69, 181. Claimant last worked as a dietary aide from 2001 until July of 2005. R. 68-69, 73, 253. Claimant alleges an onset of disability as of September 1, 2005. R. 49. On or about October 17, 2005, Claimant filed the

_____

[1] In Claimant's memorandum in opposition to the Commissioner's final decision, she states that she was born on December 9, 1978. Doc. No. 15 at 3. However, in her application for disability insurance benefits and at the hearing, Claimant stated she was born on February 9, 1978. R. 49, 251.

present application for a period of disability and disability insurance benefits alleging disability due to seizure disorder. R. 49.[2] Claimant remains insured through December 31, 2010. R. 14.

On December 8, 2005, Claimant's application was denied initially and, on March 23, 2006, the application was denied again upon reconsideration. R. 32, 39-40. On April 1, 2006, Claimant requested a hearing before an Administrative Law Judge (the "ALJ") and, on October 16, 2007, a hearing was held before the Honorable Gerald Murray. R. 40, 248-265.

At the hearing, Claimant was represented by Richard Swartz, Esq. R. 248. Claimant and a lay witness, Brianna Casson, testified at the hearing. R. 248-265. Claimant testified to the following in pertinent part:

- She began having seizures when she was eighteen years old;

- She had to stop working due to multiple seizures;

- She has three types of seizures: grand mal, petit, and auras;

- She last had a seizure three or four days prior to the hearing;

- She sometimes has seizures once a day, three times a week, or two times per week;

- She has an average of three grand mal seizures a week;

- She has seizures while asleep;

- She has been treated by a neurologist, Dr. Zwolinski, since she was eighteen and sees him once a month;

- Her medications include Keppra, Topamax, and Ativan;

- She sometimes forgets to take her medications as prescribed;

- She suffers side effects from the medication, including stuttering, dry mouth, sensitivity

---

[2] Claimant's application is dated October 17, 2005. R. 49. However, the Administrative Law Judge's decision and the Disability Determination and Transmittal form state that Claimant filed her application on September 28, 2005. R. 12, 29.

to the sun, diminished spelling and reading ability, drowsiness, headaches, inability to focus, and she is easily agitated;

- Her medications have increased, but she continues to have seizures; and

- If she stands for prolonged periods, she gets dizzy and lightheaded.

R. 248-60.  Brianna Casson testified as follows:

- She has known Claimant for approximately six years;

- She is a friend of Claimant and her family;

- She has witnessed ten of Claimant's seizures over the past six years;

- When Claimant has seizures she does not or cannot communicate with others;

- After a seizure, Claimant is very forgetful; and

- Before a seizure, Claimant often has very bad headaches and dizziness.

R. 260-64.[3]

On January 14, 2008, the ALJ issued an unfavorable opinion finding Claimant not disabled.  R. 12-18.  In his decision, the ALJ made the following pertinent findings:

1. Claimant meets the insured status requirements of the Social Security Act through December 31, 2010;

2. Claimant has not engaged in substantial gainful activity since September 1, 2005;

3. Claimant has the following severe impairment: seizure disorder (20 CRF 404.1520(c));

4.  [A]n analysis of the full record establishes that [Claimant's] impairment contributes to no reduction in the claimant's ability to perform work-related activities reflected in the [RFC] assigned to her below.  Accordingly, the undersigned finds that the [Claimant's] impairments . . . are 'severe' within the parameters of applicable legal authority;[4]

---

[3] A Vocational Expert did not testify at the hearing.

[4] Section 404.1520(c) states: "If you do not have any impairments or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."  20 C.F.R. § 404.1520(c) (emphasis added).

5. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. The undersigned has specifically evaluated the criteria of listing 11.00 neurological and finds that the Claimant does not meet or medically equal the listings of a listed impairment;

6. After careful consideration of the entire record, the undersigned finds that Claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she has no exertional or mental limitations; however, due to seizure disorder the claimant should avoid concentrated exposure to unprotected hazards, heights, and machinery;

7. Claimant is capable of performing past relevant work as a housekeeper and dietary aide. This work does not require the performance of work-related activities precluded by the claimant's [RFC];

8. Claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2005 through the date of this decision.

R. 12-18 (emphasis added). In the decision, the ALJ found Claimant's medically determinable impairments could reasonably be expected to produce Claimant's alleged symptoms, but "Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. 16.

In the body of the ALJ's decision, he provides the following:

> The record in this case has demonstrated that the [C]laimant is an individual who can attend to her own personal needs. The [C]laimant testified that she could dress and bathe herself. She testified that she cooks and does housework, as well as some grocery shopping. The [C]laimant does drive, and she visits relatives and friends on an ongoing basis. She has hobbies such as watching TV. The [C]laimant testified that she is currently taking medications but offered no side effects from these medications such as sleepiness.
>
> The [C]laimant alleged disability due to seizures. The [C]laimant testified that she has seizures and when they occur she would look as if she was staring into space and her eyes would flutter. The [C]laimant testified side [e]ffects of medications make her stutter, have dry mouth, can not be in the sun or get hot, gets agitated, is

forgetful and doesn't remember what she reads, drowsiness. In addition, she testified that her spelling and reading are bad and she feels it is due to the medication. However, she can follow along when watching TV. She does not smoke, drink, or have a driver's license due to her seizures. The [C]laimant also stated that she has daily headaches for which she takes medication of Tylenol.

R. 16 (emphasis added).[5] Regarding the medical evidence, the ALJ stated the following:

Medical evidence of record demonstrates the claimant has been seen in the emergency room on several occasions for headaches and seizures. The claimant has been given a diagnosis of generalized seizure disorder; however, several emergency room visits has (sic) been due to non-compliance with her medication.

Consultative report dated July 13, 1997 completed by Ralph Zwolinski, M.D. shows the claimant went to sleep and was apparently observed having a generalized seizure. It was reported that she had never had a seizure or syncopal episodes previous. In fact, she denied any history of neurological symptoms previous to this episode.

On September 14, 2005 Melanie Eskew, M.D. examined the [C]laimant due to complaint of seizure disorder. The claimant's neurological examination was within normal limits. Dr. Eskew advised the [C]laimant to continue the medication therapy of Dilantin three times daily and to check her level in a week.

On September 27, 2005 Jacob Green M.D., Ph.D. noted the neurological examination of the [C]laimant was within normal limits. Her face was symmetrical and there was no weakness detected. Reflexes were 2+ throughout. She had normal finger to nose, heel to shin and gait to station.

Monahan Kate reviewed the medical evidence of record at the request of the [Commissioner] on November 29, 2005. It was noted the [C]laimant had seizures since age 18 and was placed on

---

[5] The Court has reviewed the entire transcript of Claimant's testimony and was unable to find any questions or testimony regarding Claimant's personal hygienic needs or ability, Claimant's ability to cook, do housework, or grocery shop. *See* R. 248-60. Moreover, the ALJ's statement that in her testimony Claimant offered no side effects from her medications is not accurate. As set forth above, Claimant testified at some length regarding the various side effects she experiences from her medication, including drowsiness. *See* R. 254-58. The ALJ himself notes Claimant's specific side effects four sentences after stating Claimant testified that she has no side effects. R. 16.

medication therapy several years prior; however, records reveal the [C]laimant had not been compliant both in the past and at that current time. EEG completed on October 3, 2005 demonstrated normal limits with drowsiness. The record also demonstrates the [C]laimant had been advised not drive; however, she (sic) record shows she had a seizure in September 2005 while driving. Her own treating physician felt that her seizures were secondary to non-compliance. It was determined the [C]laimant could lift and carry twenty pounds occasionally, ten pounds frequently, sit, stand and walk six hours each per eight hour workday with occasional climbing ramps and stairs but never ladders, ropes or scaffolds. The [C]laimant should avoid concentrated exposure to hazards such as unprotected heights and machinery.

. . .

After review of the medical evidence of record at the request of the [Commissioner] Terry Rees concluded the [C]laimant had no exertional limitations; however, the [C]laimant should avoid even moderate exposure to unprotected heights, hazards, and machinery.

R. 16-17.

Regarding Claimant's treating physician's ultimate medical opinion, the ALJ stated the following:

Dr. Zwolinski opined on March 27, 2007 the [C]laimant suffered from seizure disorder and was on medication therapy that may cause impairment of her cognition. Dr. Zwolinski further opined that this would require repeated instructions when learning a new task. Dr. Zwolinski completed a form for medical verification on August 31, 2007, whereby he reported the [C]laimant had a permanent condition of epilepsy and could not perform any substantial gainful activity.

. . .

The [C]laimant had past relevant work as [a] housekeeper and dietary aide. The medical evidence of record demonstrates the [C]laimant has seizure disorders, but there is no medical evidence of record since her alleged onset date of September 1, 2005 with the exception of the report by Dr. Zwolinski. The undersigned gives little weight to Dr. Zwolinski's opinion as it does not reflect the longitudinal history of the [C]laimant's impairment.

6

R. 17 (emphasis added).[6]

On February 29, 2008 Claimant requested review of the ALJ's decision before the Appeals Council. R. 5. On May 2, 2008, the Appeals Council denied review. R. 1-3. On June 4, 2008, Claimant timely filed an appeal in the district court. Doc. No. 1. On September 29, 2008, Claimant filed a memorandum in support of his position on appeal. Doc. No. 15. On November 25, 2008, the Commissioner filed a memorandum in support of the Commissioner's final determination. Doc. No. 17. The appeal is now ripe for review.

## II.   THE PARTIES' POSITIONS

Claimant assigns four errors to the Commissioner's decision: 1) the ALJ erred at step three of the sequential evaluation process by failing to adequately consider whether Claimant's seizure disorder meets or medically equals one of the Listing;[7] 2) the ALJ erred by failing to make any findings regarding the effect of Claimants medication on her ability to work (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)); 3) the ALJ erred by failing to provide "explicit and adequate" reasons for rejecting the medical opinions of the treating physician (citing *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir. 1991)); and 4) the ALJ erred by failing to weigh the testimony of the lay witness (citing *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990)). Doc. No. 15 at 1-24.

---

[6] The ALJ's statement that "there is no medical evidence of record since [Claimant's] alleged onset date of September 1, 2005," is not accurate. Claimant was treated in the emergency room for seizures on September 12 and 13, 2005 for seizures. R. 102-03, 106, 216-17. On September 27, 2005, Claimant was seen by a neurologist, Dr. Jacob Green, for a consultation regarding her seizure disorder. R. 227-29. On September 29, 2005 and October 3, 2005, Claimant was seen for a follow up appointments related to her seizures. R. 220-22. On February 28, 2006, Claimant presented to the emergency room complaining of seizures. R. 231. The emergency room records reveal an increase in Topamax was prescribed one week earlier. R. 231.

[7] The Listings are set forth in 20 C.F.R. Pt. 404, Subpt P, App. 1 *et seq*.

The Commissioner argues that substantial evidence supports his decision to deny Claimant's claims for a period of disability and disability insurance benefits. Doc. No. 17 at 3-4. The Commissioner maintains that: 1) Claimant failed to meet her burden to establish that her impairment meets or equals Listings 11.02 or 11.03 and the ALJ's statement that Claimant did not meet the criteria of Listing 11.00 is sufficient; 2) the ALJ properly reviewed and rejected Dr. Zwolinski's opinion about the impact of the side effects Claimant's medications have on her ability to function because the opinion "is not consistent with the longitudinal picture of [Claimant's] impairment as represented by contemporaneous medical record[s]"; 3) the ALJ did not err by rejecting Dr. Zwolinski's opinion that Claimant was unable to perform any substantial gainful activity because his opinion is not a medical opinion and is, therefore, entitled to no weight; moreover, the opinion is not supported by Dr. Zwolinski's own medical record and is inconsistent with other substantial evidence of record; and 4) the ALJ did not err by failing to mention or weigh the testimony of the lay witness because by specifically finding Claimant's subjective testimony "not entirely credible" the ALJ implicitly rejected the duplicative allegations of the lay witness (citing *Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981)).

## III.    LEGAL STANDARDS

### A.    THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant

as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all

of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able

to do other work, he is not disabled.  If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

**B.    THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*,

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or

that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99

F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of

claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand

appropriate where record was insufficient to affirm, but also was insufficient for district court to

find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a

sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his

decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to

allow ALJ to explain his basis for determining that claimant's depression did not significantly

affect her ability to work).[8] In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the
> Commissioner of Social Security, but only upon a showing that there is new
> evidence which is material and that there is good cause for the failure to
> incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1) that there is

new, non-cumulative evidence; 2) that the evidence is material — relevant and probative so that

there is a reasonable possibility that it would change the administrative result; and 3) there is

good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at

1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d

1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v.*

*Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994). A sentence-six remand

---

[8] On remand under sentence four, the ALJ should review the case on a complete record, including any new material
evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric
report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ
required to consider the need for orthopedic evaluation). After a sentence-four remand, the district court enters a
final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095.[9]

## IV.   ANALYSIS OF ALLEGED ERRORS

### A.  Whether the ALJ Erred at Step Three of the Sequential Process

Claimant argues that the ALJ erred by failing to adequately consider whether her seizure disorder meets or equals Listings 11.02 and 11.03.  Doc. No. 15 at 12.  As set forth above, the ALJ specifically found "[C]laimant does not have an impairment or combination of impairments that meets or medically equals [the Listings]."  R. 14.  The ALJ also stated that he "specifically evaluated the criteria of listing 11.00 neurological and finds that the [C]laimant does not meet or medically equal the listings of a[ny] listed impairment. . . ."  R. 15; supra at 4.  Claimant asserts that the ALJ's statements are not sufficient.  Doc. No. 15 at 14.

The regulations for Listing 11.00 state the following in pertinent part:

> A. Epilepsy. In epilepsy, regardless of etiology, degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. At least one detailed description of a typical seizure is required. Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena. The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available.

> Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective

---

[9] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Id.*  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  *Id.*

clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken. When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels. Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of metabolism of the drug. Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance. When the reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels. Where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from the side effects of this medication must be also assessed. Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level.

20 C.F.R. Pt. 404, Subpt P, App. 1 § 11.00. Claimant was diagnosed with seizure disorder and/or epilepsy by Dr. Zwolinski. R. 135-37. Listings 11.02 and 11.03 relate to epilepsy and provide the following:

11.02 Epilepsy--convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
A. Daytime episodes (loss of consciousness and convulsive seizures) or
B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

11.03 Epilepsy--nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of

> consciousness and transient postictal manifestations of
> unconventional behavior or significant interference with activity
> during the day.

20 C.F.R. Pt. 404, Subpt P, App. 1 §§ 11.02, 11.03. A step three of the ALJ's sequential

analysis, the burden is on the Claimant to prove the existence of a listing level impairment.

*Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). In *Carnes*, 936 F.2d at 128, the

Eleventh Circuit held a "[d]iagnosis of a listed impairment is not alone sufficient; the record

must contain corroborative medical evidence supported by clinical and laboratory findings." *Id*.

In *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002), the Eleventh Circuit held that in

order "[t]o 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must

provide medical reports documenting that the conditions meet the specific criteria of the Listing

and the duration requirements." *Id*.

The district court in *Wilson* reversed the decision of the ALJ in part because although the

ALJ specifically found that the claimant did not meet or equal a listing, the ALJ did not discuss

the cumulative effects of the claimant's impairments and whether or not they equaled a listing.

284 F.3d at 1224. The Eleventh Circuit reversed stating:

> [T]he ALJ specifically stated that "medical evidence establishes
> that [Wilson] had [several injuries] which constitute a 'severe
> impairment', but that he did not have an impairment or
> combination of impairments listed in, or medically equal to one
> listed [in the Listings]. . . . The ALJ's determination constitutes
> evidence that he considered the combined effects of Wilson's
> impairments. . . . Therefore, we disagree with the district court's
> statement that the ALJ did not discuss the cumulative effects of
> Wilson's impairments.

*Id*. at 1224-25. In the present case the ALJ found that the Claimant's impairment is severe (*see*

supra n. 3), but said impairment does not meet or medically equal the criteria of a listing. R. 14-

15.[10]  Pursuant to *Wilson*, the ALJ's determination constitutes evidence that he considered whether Claimant's impairment meets or medically equals a listing.  284 F.3d at 1124-25.  Thus, the ALJ did not err at step three of the sequential process in the manner alleged by Claimant.

### B.  Whether the ALJ Erred by Failing to Make Findings Regarding Medication

Claimant argues that the ALJ is required to consider the type, dosage, effectiveness and side effects of any medications, but the ALJ failed to make any findings regarding the effects of Claimant's medications on her ability to function or work.  Doc. No. 15 at 15-18.  The Commissioner asserts that while Dr. Zwolinski opined that Claimant's medications affect her ability to work, "the ALJ properly reviewed these opinions and rejected them as not consistent with the longitudinal picture of [Claimant's] impairment as represented by [the] contemporaneous medical record."  Doc. No. 17 at 8-9.  The issue Claimant has raised is not whether the ALJ properly rejected Dr. Zwolinski's opinion regarding the limiting effects of Claimant's medications.  Rather, the issue presented by Claimant is whether the ALJ failed to consider the side effects of Claimant's medications on her ability to function or work.

As set forth above (*see* supra p. 5, n. 5), the ALJ's statements and findings regarding the side effects of Claimant's medications are inaccurate and inconsistent.  The ALJ stated that during Claimant's testimony she "offered no side effects from these medications such as sleepiness."  R. 16.  In fact, Claimant testified that she suffers numerous side effects from her medication.  R. 254-58.  The ALJ then notes, four sentences after stating Claimant's testimony offered no side effects, that she "testified side [e]ffects of medications make her stutter, have dry mouth, can not be in the sun or get hot, gets agitated, is forgetful and doesn't remember what she

---

[10] The ALJ's finding that Claimant's impairment is "severe" is inconsistent with his finding that Claimant's impairment results in no reduction in her ability to perform work-related activities. *See* 20 C.F.R. § 404.1520(c); see also supra p. 3, n. 4.

reads, drowsiness." R. 16. The ALJ finds Claimant's testimony regarding the severity of her impairment "not entirely credible" (R. 16) and concludes that all of Dr. Zwolinski's opinions are entitled to "little weight" (R. 17), but the ALJ never makes a specific finding or offers regarding the side effects of Claimant's medication.

In *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981), the Eleventh Circuit held that the ALJ failed in his duty to fully develop the record because "'[a]t [the] very least, the administrative law judge should have made a finding on appellant's claim regarding side effects, making it possible for a reviewing tribunal to know that the claim was not entirely ignored.'" *Id*. (quoting *Figueroa v. Secretary of HEW*, 585 F.2d 551, 554 (1st Cir. 1978)). Accordingly, the Eleventh Circuit has held that "an ALJ has a duty to investigate the possible side effects of medications taken by claimant," because "'[i]t is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability.'" *McDevitt v. Commissioner of Social Security*, 241 Fed.Appx. 615, 619 (11th Cir. 2007) (quoting *Cowart*, 662 F.2d at 737)).

In *McDevitt*, 241 Fed.Appx. at 619, the Eleventh Circuit faced similar misstatements from the ALJ and held the following:

> The ALJ specifically stated that "[t]he claimant did not mention any concentration or memory difficulties at the hearing, although he said he was depressed." This is inaccurate. McDevitt specifically testified that the medication he was taking at the time, Librium, caused extreme lack of concentration. McDevitt also testified that he took Benadryl, which made him sleepy. When the ALJ asked McDevitt if he could perform the duties of a telemarketer, McDevitt replied that he did not know because "it requires concentration." While the ALJ found McDevitt's testimony "somewhat exaggerated," the ALJ made no finding, as to credibility or otherwise, regarding McDevitt's claim that his medications caused severe concentration problems and made him

> drowsy. Since the ALJ failed to make a finding as to this claim, the
> ALJ's determination that McDevitt could perform the duties of a
> telemarketer was not based on substantial evidence in the record.

*Id.* Similarly, the present ALJ's inaccurate and inconsistent statements regarding Claimant's testimony and the lack of any specific finding as to the side effects of Claimant's medications on her ability to work make it impossible for the Court to determine whether the ALJ's decision is supported by substantial evidence. Thus, the ALJ's decision must be **REVERSED and REMANDED pursuant to sentence four of Section 405(g)**.

### C. Whether Good Cause Existed to Discount the Treating Physician's Opinions

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ stating the specific weight given to different medical opinions and the reasons therefor, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[11] Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847

---

[11] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005). "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269. Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The ALJ specifically gave "little weight to Dr. Zwolinski's opinion as it does not reflect the longitudinal history of the [C]laimant's impairment." R. 17. The ALJ did not provide a specific weight to any of the other physician's opinions or records and did not state which opinions and records he relied on in making his decision and the reasons therefor. Those errors alone require the Court to reverse. *Sharfarz*, 825 F.2d at 279. Moreover, given that the ALJ inaccurately stated that "there is no medical evidence of record since . . . September 1, 2005," the Court finds that the ALJ's stated reason for discounting Dr. Zwolinski's opinions is difficwult to comprehend and is not supported by substantial evidence or good cause. R. 17. Thus, the ALJ's decision must be **REVERSED and REMANDED pursuant to sentence four of Section 405(g)**.

### D. Whether the ALJ Erred by Failing to Consider Lay Testimony

In *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990), after noting that the ALJ had

failed to review lay testimony or state reasons for rejecting in it his decision, the Eleventh Circuit directed the ALJ on remand to "state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence, including all testimony presented at the . . . hearing." *Id*. However, the Eleventh Circuit does not require an ALJ to make a specific credibility finding as to lay testimony if the ALJ's credibility finding as to the claimant sufficiently implies a rejection of lay witness testimony. *See Osborn v. Barnhart*, 194 Fed.Appx. 654, 666 (11th Cir. 2006). The Court cannot determine from the record whether the ALJ overlooked the lay witness testimony, gave it some weight, or completely disregarded it. Thus, the ALJ's decision must be **REVERSED and REMANDED pursuant to sentence four of Section 405(g)**.

## V.    <u>CONCLUSION</u>

Given the cumulative effect of the ALJ's material misstatements of fact, and when coupled with the ALJ's failure to state the weight given and the reasons therefor to the records and opinions of every medical professional except for the treating physician, the Court is unable to determine whether substantial evidence supports the ALJ's decision as a whole. *See e.g. Rodgers v. Astrue*, Case No. 3:05-cv-543-J-TEM, 2009 WL 513757 at *4 (M.D. Fla. March 2, 2009).

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is **REVERSED AND REMANDED** pursuant to sentence four of Section 405(g). The Clerk is directed to enter a separate judgment in favor of the Claimant and close the case.

**DONE and ORDERED** in Orlando, Florida on June 18, 2009.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Richard A. Culberston
3222 Corrine Drive, Suite E
Orlando, FL 32803

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Richard V. Blake, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Gerald F. Murray
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224